**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE )
)
    v. ) Crim. I.D. No. 2305011642
)
LOGAN GRUBER, )
)
    Defendant. )

Date Submitted: March 1, 2024
Date Decided: May 31, 2024

## ORDER

This 31st day of May, 2024, after having considered Logan Gruber's (hereinafter "Gruber") Motion to Suppress (hereinafter "Motion"), the State's response in opposition, the testimony at the suppression hearing held and the record, it appears to the Court that:

1. Gruber was arrested for Driving Under the Influence of Alcohol and related offenses following a two-vehicle crash in the City of Wilmington on May 22, 2023.[1] The crash involved Gruber's car and a Wilmington Police Department (hereinafter "WPD") vehicle. Initial responding officers observed a marked police patrol vehicle rolled onto its side, leaking fluid and on fire. Two WPD Officers were inside the patrol vehicle and were transported to Christiana Hospital. Assisting officers approached the other vehicle, a red Kia Soul, and found the sole occupant,

---

[1] *State v. Logan Gruber*, Crim. ID No. 2305011642, D.I. 1.

Gruber, still inside and in need of medical assistance.[2] The officers turned Gruber over to the medical personnel, who transported him by ambulance to Christiana Hospital.[3]

2. Due to his medical condition, WPD was unable to fully investigate the crash and talk with Gruber at the scene. Therefore, Corporal (hereinafter "Cpl.") Keith Johnson, assigned to the WPD Traffic Unit, went to Christiana Hospital to interview Gruber.[4] Prior to Cpl. Johnson's arrival, another WPD officer, Giles, was sent to remain with Gruber to monitor his "status." This is done by WPD in every serious collision investigation.[5] Giles was at the door to Gruber's room. Officer Giles did not speak with Gruber or place him into custody; he simply stood near his room door.[6]

3. Cpl. Johnson continued his investigation at the hospital with Gruber, talking to him twice.[7] The first interview occurred around 9:45 p.m.[8] At that time, Cpl. Johnson looked through Gruber's personal effects set aside in the hospital room, including clothing, and found Gruber's identification.[9] Cpl. Johnson asked Gruber

---

[2] State's Response ¶ 2
[3] *Id.*; D.I. 25.
[4] D.I. 25; State's Response ¶ 3
[5] D.I. 25.
[6] D.I. 25; State's Response ¶ 3
[7] D.I. 25; State's Response ¶ 5
[8] *Id.*
[9] D.I. 25; Def.'s Mot. To Suppress ¶ 3

routine roadside crash investigation, such as where he was going and from where he was coming.[10] During these questions, Gruber stated that he was in pain, which was evident to Cpl. Johnson, as well as the fact that Gruber was in a neck brace and unable to meaningfully answer questions due to his injuries.[11] Therefore, Cpl. Johnson paused this interview.

4. Based upon information received regarding the possible use of inhalants by Gruber prior to the crash, Cpl. Johnson prepared and received a search warrant for Gruber's blood. Cpl. Johnson testified that given his knowledge of how quickly evidence of inhalants leave the blood system, he believed time was of the essence.[12]

5. After Gruber received pain medication and was more coherent, at around 11:00 p.m., Cpl. Johnson resumed his crash investigation.[13] Prior to re-initiating questioning, the search warrant was executed by a phlebotomist drawing a sample of Gruber's blood in Gruber's same hospital room.[14] Cpl. Johnson administered the horizontal gaze nystagmus test and then resumed his questions.[15] Specifically, he asked Gruber when the last time that he had taken medication and

---

[10] D.I. 25; State's Response ¶ 6
[11] D.I. 25; State's Response ¶ 5-6
[12] *Id.*
[13] D.I. 25; State's Response ¶ 7
[14] Def.'s Mot. To Suppress ¶ 4; State's Response ¶ 7
[15] D.I. 25; State's Response ¶ 7

whether he had any alcohol to drink.[16] Gruber listed out a slew of prescription medications he took that morning, including Effexor, Vivitrol, Gabapentin, Seroquil and more. He denied having had anything to drink, taking any "hard drugs" or marijuana. Gruber was asked about the nature of his use of "whippets," including the last time he had used the inhalant drug, how much he had used, where he had used it, and how he had used it.[17] Gruber told Cpl. Johnson that he had used approximately five pounds of "whippets" earlier in the day while parked outside of the "head shop" where he bought the inhalant.[18] Gruber further stated that he used an accompanying tank that has a nozzle which pushes the release button of the inhalant canister.[19] Cpl. Johnson asked if Gruber felt he was able to drive "the same as normal" after using the inhalant, to which Gruber responded that he normally does not drive right away but that he gets confused sometimes.[20]

6.     After Cpl. Johnson finished his questioning, he informed Gruber that medical staff would be performing more tests and that he would leave paperwork for Gruber regarding his car.[21] Cpl. Johnson's interview ended around 11:34 p.m.[22] Prior to leaving, Cpl. Johnson told Gruber that it appeared as if he would be there a

---

[16] D.I. 25; Def.'s Mot. To Suppress ¶ 5
[17] D.I. 25; Def.'s Mot. To Suppress ¶ 5
[18] D.I. 25; Def.'s Mot. To Suppress ¶ 5
[19] D.I. 25; Def.'s Mot. To Suppress ¶ 5
[20] D.I. 25; Def.'s Mot. To Suppress ¶ 5
[21] D.I. 25; State's Response ¶ 9
[22] D.I. 25; State's Response ¶ 9

while, which is why he left the paperwork for him regarding the car. Medical records indicate Gruber was discharged at 3:30 a.m. on May 23, 2023.[23]

7.     Gruber moved to suppress all statements made at Christiana Hospital on May 22, 2023. The State opposed, arguing the totality of circumstances presented does not establish that Defendant Gruber was in custody at the time of the questioning by Johnson. A suppression hearing was held on March 1, 2024.[24] This is the Court's decision.

8.     On a motion to suppress evidence, the State bears the burden of proof to establish that the challenged police conduct comported with the rights guaranteed the defendant by the United States Constitution, the Delaware Constitution and Delaware statutory law.[25] The State must establish by a preponderance of evidence that the evidence was lawfully obtained.[26]

9.     The *Miranda* recitation is required when a person is subject to custodial interrogation by a police officer.[27]  This long-standing legal principle has been thoroughly examined by various courts throughout the years. It has since been established the police are not required to advise people of their rights pursuant to

---

[23] State's Response ¶ 10
[24] D.I. 25.
[25] *State v. Darling*, 2007 WL 1784185 (Del. Super. Ct. June 8, 2007), as corrected (July 3, 2007)
[26] *Id*.
[27] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda* during roadside investigations.[28]  This does not necessarily change when the police are unable to investigate a motor vehicle collision at the scene, due to a person's medical transport to the hospital.  There is no "per se hospital rule," rather each case is decided on its own unique facts, examining the totality of the circumstances to decide whether a reasonable person would feel as if they were free to leave during the questioning, taking into account their medical condition.[29]

10.    Both the testimony given by Cpl. Johnson and his Body Worn Camera ("BWC")[30] revealed that WPD Officer Giles, was seated just inside of Gruber's hospital room, and was there so WPD could be apprised of Gruber's "status."  Giles never placed Gruber under arrest, nor did it appear as if he ever had any spoken words with Gruber.  Giles was seen on Johnson's Body Worn Camera standing at the door of the hospital room on his cell phone, walking in and out of the area multiple times.  Cpl. Johnson testified that he does not know how told Giles to go to the hospital, but that in general, every party involved in a serious collision has a WPD officer accompany them to monitor status, take down any statements they may make and document any necessary information.[31]

---

[28] *Laury v. State*, 260 A.2d 907, 908 (Del. 1969).
[29] *Hammond v. State*, 569 A.2d 81, 93-94 (Del. 1989)*, see also DeJesus v. State*, 655 A.2d 1180, 1190 (Del. 1995).
[30] D.I. 25, State's Exhibit 1.
[31] D.I. 25.

11.    Akin to *Hammond*, the questioning of Gruber were questions that would have been asked roadside, which would not have required a preceding *Miranda* warning. Gruber's status at the hospital did not change that. Neither did the presence of Giles.[32] Gruber was not under arrest. Gruber was questioned twice by Cpl. Johnson, however this fact does not mean the second questioning was custodial interrogation. The second questioning occurred after initially Johnson saw that Gruber was in so much pain and decided it wasn't productive for either of them to continue until Gruber was treated. Upon his return, Johnson continued getting routine collision investigation information from Gruber as he was no longer in obvious pain. The record does not indicate whether Gruber was aware of Giles presence, as Gruber was laying down on a gurney throughout the entirety of the Body Worn Camera and there is no evidence that the two ever spoke. As mentioned before, Giles appeared to be giving more attention to his cellular phone than Gruber, per the BWC.

12.    Gruber was not handcuffed, physically restrained by WPD action, nor told that he was or was going to be under arrest at any point. It is noteworthy that the blood search warrant was obtained, explained to Gruber and executed prior to the second set of questioning. This factor does lean towards an indicia of a custodial

---

[32] The Court is cognizant of the fact that in *Hammond*, there was no officer stationed near Hammond in the hospital when he was questioned.

setting, however, given the totality of the factors, it does not translate into a finding that Gruber was in custody for purposes of *Miranda*.

13.     In looking at the totality of the circumstances, a reasonable person in Gruber's situation would not have felt that he was not free to leave, thus, he was not in custody for purposes of *Miranda*.   Gruber's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

Original to Prothonotary

cc:     Samuel Kenney, Esquire, Deputy Attorney General
        Jason Antoine, Esquire